**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Darryl Jackson and DWJ Petroleum,** | ) | |
| | ) | 06 C 3676 |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Paul Cerpa in his individual and official** | ) | |
| **capacity, and Illinois Department of** | ) | Judge Shadur |
| **Transportation,** | ) | |
| **Defendants.** | ) | |

**NOTICE OF FILING CORRECTED EXHIBIT
TO PREVIOUSLY NOTICED MOTION**

**TO:**   AAG Peter Koch
AAG Shirley Calloway
100 West Randolph
Chicago IL 60602.

**PLEASE TAKE NOTICE** that on Thursday, November 19, 2009, I filed with the Clerk of the United States District Court for the Northern District of Illinois Eastern Division, plaintiffs' **Proposed Second Amended Complaint** to replace Docket entry 93-2 for the previously noticed motion (Docket Entry 92) a copy which is hereby served upon you.

By:   /s/ Jorge Sanchez
One of the Attorneys for Plaintiffs

Jorge Sánchez
Michael Persoon
Despres, Schwartz and Geoghegan
77 West Washington, Suite 711
Chicago, Illinois 60602
(312) 372-2511

James R Fennerty
James R. Fennerty and Associates
36 South Wabash Avenue
Suite 1310
Chicago, IL  60603
(312) 345-1704

## CORRECTED EXHIBIT A
## plaintiffs' Proposed Second Amended Complaint
## Docket Entry 93-2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Darryl W. Jackson and DWJ Petroleum,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | No: 06 C 3676 |
| | ) | |
| **vs.** | ) | |
| | ) | The Honorable Milton Shadur |
| **Paul Cerpa in his individual capacity,** | ) | |
| **Timothy Martin, Gilbert Villegas and** | ) | |
| **Nadine LaCombe  in their individual and** | ) | |
| **official capacities, and Illinois** | ) | |
| **Department of Transportation,** | ) | |
| **Defendants.** | ) | |

**PROPOSED SECOND AMENDED COMPLAINT**

**I. INTRODUCTION**

1.    Plaintiffs, Darryl W. Jackson ("Jackson") and DWJ Petroleum ("DWJ"), pursuant to 42

U.S.C. §1983, sue defendants Paul Cerpa, Timothy Martin, and Gilbert Villegas in their

individual capacities for violating plaintiffs' right to equal protection and bring against these

same defendants supplemental state common law claims for interference with contract and/or

prospective economic advantage. Also against Paul Cerpa, plaintiffs sue for defamation per se.

The Illinois Department of Transportation ("IDOT"), is sued under 42 U.S.C. 2000(d) ('Title

VI") for intentionally discriminating by failing to follow Federal laws and regulations regarding

the participation of disadvantaged business enterprises in Federally funded programs.

Additionally, plaintiffs bring a supplemental state count against IDOT under the Illinois Civil

3

Rights Act 740 ILCS 23/5(a)(2) for utilizing criteria and methods of administration in the awarding of contracts that have the effect of subjecting individuals to discrimination because of their race or color. Plaintiffs also sue under 42 U.S.C. 1988 and under 740 ILCS 23/5(c) for the award of attorneys fees and costs.

2.    Plaintiff Jackson, through his company DWJ , had a two contracts valued at over $7.5 million with Walsh Construction ("Walsh") to perform the rebar work on part of the rehabilitation of the Dan Ryan Expressway the two contracts were variously referred to as 1x and 2x and had the more formal designation contract no 9____, 9____.

3.    As a certified Disadvantaged Business Enterprise ("DBE"), DWJ submitted a bid which prime contractor Walsh Construction used, in turn, in its bid which was designated as the low bid by IDOT. As part of the final approval process involving IDOT projects, Walsh submitted a utilization plan ("U Plan") listing DWJ as one of the DBE's which would work for Walsh on the project to satisfy, in part, the participation goals for the contract by disadvantaged business enterprises.

4.    Individual defendants, Paul Cerpa, and Gilbert Villegas participated in an unlawful, discriminatory and arbitrary scheme outside of IDOT's regular and approved DBE program processes in which they threatened Walsh that they would withhold approval of Walsh's DBE Utilization Plans (U-plan) (and consequently the entire contract) for the Dan Ryan 1x and 2x projects unless DWJ was taken off of Walsh's U-plan.

5.    Simultaneously, Villegas was authorized and encouraged by Cerpa to make repeated demands upon DWJ Petroleum and Mr. Jackson for information that was not within IDOT's regular procedures, nor Federal regulations for approving U-plans, nor requested of other

4

proposed DBE's.

6.  Defendant Martin acceded to the actions, taken by Cerpa and Villegas and approved the denial U-plan for reasons not in conformity with Federal Regulations, or IDOT's existing procedures including that Cerpa had falsely accused DWJ Petroleum of being a "front".

7.  As a direct result of the unlawful and unprecedented intervention by the individual defendants, Walsh was forced to break its contract with DWJ and submit a new U-Plan which replaced DWJ - an African American owned DBE with Steppo Supply and Construction, a white woman owned firm.

8.  IDOT employees knew that the result of forcing DWJ from the project would liekly result in its replacement by a white-owned firm.

9.  Although the scope of work for DWJ and Steppo were the same in the two utilization plans, the later plan (Steppo's) proposed Walsh pay Steppo more for the same proposed scope of work.

10.  Additionally, the actions by individual defendants have created a cloud over DWJ and its status as a DBE and caused Jackson and DWJ to lose future profits and income and  the actions have negatively affected their continuing business opportunities.

## II.  PARTIES

11.  Plaintiff  Jackson was, at the time of the events in question, a DuPage County, Illinois resident,  owner of DWJ, and a certified MBE and DBE under the laws and regulations of the State of Illinois.

12.  Plaintiff DWJ  is a corporation incorporated in Illinois, domiciled in DuPage County and owned by plaintiff Jackson and  is certified by IDOT as a DBE.

13.  Defendant, Paul Cerpa is sued in his personal capacity, and held the position of Director of

the Office of Business and Workforce Diversity Office for IDOT and presently is the Executive

Director of The Hispanic American Construction Industry Association or (HACIA).

14.   Defendant, Timothy Martin is sued in his personal capacity, and at the time of the events at

issue in the case served as the Secretary of Transportation.

15.   Defendant, Gilbert Villegas is sued in his personal capacity, and at the time of the events at

issue in the case, served as a Contract Compliance Coordinator for IDOT and is now also

employed as the Associate Director of HACIA.

16.   Defendant, IDOT is a State agency charged with among other duties, oversight and the

award and approval of bids on transportation construction projects in Illinois.

### III.   JURISDICTION

17.   Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C.§§ 1331 and 1343 as to

the federal claims in Counts I, and III.  He invokes 28 U.S.C.§1367 as to the supplemental state

law claims in Counts II,IV and V.   Plaintiffs also seeks their legal fees and costs pursuant to 42

U.S.C. § 1988.

18.   Venue lies in this judicial district both because all parties reside here and most of the

actions set forth below took place in this judicial district.  28 U.S.C. § 1391(b)(2).

### IV.   FACTS

19.   In early 2002, Mr. Jackson became aware  that a contract that was to be let by  IDOT for the

reconstruction work on the Dan Ryan Express lanes.

20.   Jackson, through his company, DWJ, has in the past performed subcontracting work as a

DBE subcontractor with Walsh. He sought to participate in the Dan Ryan Reconstruction project by performing rebar work as a DBE subcontractor for Walsh.

21. Rebar work consists of workers laying steel reinforcement rods with a certain distance between the rods. Concrete is then poured over the rods. This unskilled work is performed by Laborers.

22. Jackson has experience performing rebar work and he and DWJ were fully capable of providing all of the labor and supervision needed to participate in the Walsh contract.

23. Walsh construction was confident that Mr. Jackson could perform the work it proposed.

24. Jackson submitted a proposal to Walsh for the rebar work and his price for the work was incorporated by Walsh into its U-Plan to the IDOT for reconstruction work on the Dan Ryan Expressway.

25. The U-plans require the prime contractor to inform IDOT how the prime contractor expects to meet goals set by IDOT for the participation of Disadvantaged Business Enterprises (DBEs) in IDOT projects. The U-plans identify the dollar amount the prime contractor expects to pay each DBE and a description of the work to be performed by each DBE.

26. The total original anticipated value of the two contracts between Walsh and DWJ was in excess of 7.2 million dollars. DWJ anticipated realizing a profit of approximately seven hundred fifty thousand dollars ($750,000).

27. Walsh submitted a U-plan to IDOT based upon its inclusion of Jackson's bid for rebar work on the Dan Ryan reconstruction contract.

28. Walsh signed a letter of intent contract with DWJ and Jackson for DWJ to perform rebar work on the Dan Ryan Reconstruction project as a DBE to fulfill, in part, the requirements for

7

the participation of disadvantaged minority and women owned business enterprises in the Dan Ryan 1x and 2x projects.

29.    Walsh identified to IDOT in a DBE utilization plan required by IDOT, DWJ  and other DBE's which it planned to use for the Dan Ryan Reconstruction contracts.

30.    Additionally, the U-Plan identified the scope of work to be performed by the DBE companies, the price, and other details regarding the DBE's which were to be utilized by Walsh as subcontractors on the Dan Ryan reconstruction work.

31.    Analysis and approval of U-plans normally took place within the Small Business Enterprise Bureau within IDOT.  Approval of such plans were largely pro forma, as to DWJ , because it already had status as a certified DBE by IDOT.

32.    The approval of  the Walsh Dan Ryan Reconstruction contract was held up by Mr. Martin, Mr. Cerpa, Mr. Villegas who inserted themselves in an unprecedented manner into the  U-Plan approval process in order to get Walsh to replace DWJ as a DBE subcontractor to Walsh on this project.

33.    The approval of the Walsh Dan Ryan Reconstruction contract was  severely delayed for no reason by Mr. Cerpa, Mr. Martin, and Mr. Villegas when they deviated from the established IDOT procedures for the assessment of and approval of U-Plans.

34.    Instead of allowing the branch of IDOT that usually assessed and approved U-Plan (the Small Business Enterprise Bureau), to evaluate Walsh's 1x and 2x U-Plans, Mr. Villegas, Mr. Cerpa and Mr. Martin began an unprecedented intervention in the normal approval process for U-Plans.

35.    The interference began with Mr. Villegas informing Mr. Cerpa of the presence of DBE's on

8

the proposed U-plan and Mr. Cerpa objecting to the inclusion of DWJ which he falsely accused

of having been found by the Chicago Transportation Agency (CTA), where Cerpa had

previously worked, to be a front "for a petroleum mogul".

36.    The CTA never made any finding that Mr. Jackson was operating DWJ Petroleum or any

other business as a "front."

37.    The CTA did deny Mr. Jackson's application to be a certified Minority Business Enterprise

(MBE) when he applied.

38.    Because Mr. Jackson was not a certified MBE nor did he hold himself out as one - he could

not have been "fronting" at the time Cerpa accused DWJ of having been found by CTA to be a

"front."

39.    Cerpa communicated this false and defamatory information to others within IDOT

including defendants Villegas, Martin and others including Nadine LaCombe and Stanley Moore.

40.    Cerpa and Villegas then began to work in concert to undermine and ultimately deny DWJ

Petroleum's participation in the Dan Ryan 1x and 2x projects.

41.    As part of this interference Villegas contacted Jackson and told him that IDOT needed

further information and details from DWJ about the price break-down and projected profit of his

subcontract work.

42.    Villegas without legal authority and in contravention of regulations and advice given by the

Federal Highway Administration, required Mr. Jackson to present himself at the offices of

IDOT's Resource Center for a meeting.

43.    Villegas at the meeting required Mr. Jackson to accept the "assistance" of an outside

consultant who was brought in by Villegas to scrutinize DWJ's proposed participation, and to

funnel to Villegas and others within IDOT information which was not required of non-African-American owned companies.

44. These submissions were not required of, nor asked for from other DBE's for their approval as DBE's in a U-Plan.

45. Nor do IDOT procedures require such information for assessing, evaluating or approving U-Plans.

46. Under IDOT's procedures, Mr. Villegas' actions were wholly outside the scope of his authority and duties.

47. Mr. Jackson did not know that IDOT could not require such submissions and that they were outside of IDOT's normal approval procedures.

48. In good faith, Mr. Jackson timely provided the requested information and addressed the concerns raised about his participation.

49. Instead of communicating this fact to others at IDOT, Villegas used the e-mails sent in response to his request to Jackson and DWJ to create a cloud over DWJ.

50. Again stepping outside of his authority and duties, Villegas began a series of e-mail communications within IDOT aimed at causing Walsh to not use DWJ . These were ultimately used as pretext for excluding DWJ from Walsh's U-Plan.

51. The culmination of these efforts and interventions resulted in private communications by Cerpa, and other IDOT employees to Walsh Construction in which Walsh was forced to drop DWJ as a their preferred DBE subcontractor.

52. As a result, Walsh replaced DWJ with another DBE to satisfy participation requirements for the Dan Ryan Reconstruction project.

10

53. Walsh then submitted a new U-Plan in which it awarded the work which it had originally contracted with DWJ to perform to a different disadvantaged business enterprise.

54. In place of the African-American owned DWJ , Walsh submitted the name of a company called Steppo Supply and Construction Inc., ("Steppo") which is ostensibly owned and controlled by a white woman.

55. IDOT staff knew that the removal of the African-American owned DWJ would likely result in its replacement by a white-owned company.

56. The scope of work to be performed by Steppo was the same as that which was proposed by DWJ, but the price proposed to be paid to Steppo was higher than the price proposed to be paid to DWJ.

57. As a direct result of the individual defendants' actions and intervention, plaintiff, through his company DWJ , suffered a severe loss of business and profits due to their discriminatory and tortious behavior.

58. The certification process for DBE's working with a number of governmental entities in the State of Illinois takes place through the Illinois Unified Certification Program ("IUC P").

59. The IUCP allows any of the five entities participating in the program (IDOT, the City of Chicago, the Chicago Transportation Authority, Metra and PACE) to accept applications for and certify applicants for DBE status.

60. Once a DBE is certified by one entity its certification is valid for the other entities.

61. In or around 1988, the Federal government changed requirement for recipients of Federal highway funds: where there had previously been separate participation goals for minority owned business enterprises (MBE) and women (WBE) owned business enterprises, there was now a

11

single goal for Disadvantaged Business Enterprises among which were DBE's and WBE's.

62.   Despite this change in the program, IDOT continued to track DBE's by maintaining records as to whether a given DBE was minority owned (whether by a woman or man) or women owned (whether minority or white).

63.    After this programmatic change took place, IDOT began to award to WBE's a greater number of contracts than it had previously.

64.   IDOT also began to award more total dollars to WBE's than it did to MBE's.

65.   Since  this change took place, IDOT has awarded a disproportionate share of contract dollars under its  DBE program to business entities owned and controlled by white women as compared to those owned by minorities whether men or women.

66.   Recently, there have been numerous cases and investigations within the ICUP participating entities relating to fraud and abuse of the DBE program by companies acting as a front for DBE businesses.

67.   There are documented cases in which white women have served as a front for male relatives and falsely represented that it was her and not her relatives that was running the business.

68.   Because of the way the IUCP certification functions, if one entity mistakenly or fraudulently certifies a business as a DBE, the other participating entities would not know that the entity is not a validly certified and qualifying as a DBE.

### Count I
### Fourteenth Amendment Equal Protection

69.   Plaintiff hereby incorporates paragraphs 1-68 as if set out in their entirety herein.

70.   Plaintiff sues individuals defendants, Cerpa, Martin, and Villegas in their individual or personal capacity for violation of plaintiff's constitutional right to equal protection under the law.

71.   DWJ is an African-American owned firm whose proposed work included on Walsh's initial U-Plan submission met the specifications required of those competing for the contract.

72.   Under the terms of the U-Plan first submitted to IDOT, Walsh was to pay DWJ less than that which it agreed to pay the subcontractor, Steppo, that IDOT did approve.

73.   By inserting themselves into a process in which they had no designated or formal role, individual defendants discriminated against the plaintiffs by threatening Walsh with a flat-out denial of its U-Plan and/or further delay unless Walsh diminished the role of DWJ as a DBE subcontractor, defendants in their individual capacity and acting under color of law, violated plaintiff's right to equal treatment under the law.

74.   Also, by arbitrarily and capriciously interfering with the U-Plan approval process and violating established IDOT procedures and rules, defendants further violated Mr. Jackson's right to Equal Protection under the law as guaranteed by the Fourteenth Amendment to the Constitution.

Wherefore plaintiff prays this Court to issue an order:

A.   Declaring that individual defendants have violated plaintiff's right to Equal Protection under the law by inserting themselves into and interfering with IDOT's u-plan approval process due to Jackson's race which is African-American, and causing DWJ to be replaced by a white owned DBE on the U-Plan awarded to Walsh for work on the Dan Ryan Express lanes.

B.   Declaring that individual defendants have violated plaintiff's right to Equal

13

Protection under the law by arbitrarily and capriciously inserting themselves into and

interfering with IDOT's U-Plan approval process due to Jackson's race which is African-

American, and causing DWJ to be replaced by a white owned DBE on the U-Plan

ultimately approved by IDOT utilizing Walsh as the prime contractor for the rehabilitation

of the Dan Ryan Express lanes.

     C.    Ordering individual defendants to make plaintiffs whole for their losses which

were caused by his illegal actions.

     D.    Grant plaintiff attorneys fees pursuant to 42 U.S.C. 1988.

     E.    Order such other relief as it deems appropriate.


## Count II
## Interference with Contract/Prospective Economic Advantage

75.   Plaintiff hereby incorporates paragraphs 1-74 as if set out in their entirety herein

76.   Plaintiffs sue defendants Cerpa, Martin, and Villegas in their individual capacities as to this

count and invokes the supplementary jurisdiction of this Court over state laws claims pursuant to

28 U.S.C. 1367 with respect to this claim.

77.   Plaintiff DWJ, had a sub-contract to perform rebar work for Walsh for the Dan Ryan

reconstruction project.

78.   In part, because of DWJ's status as a DBE, Walsh would meet the participation targets set

by IDOT for such businesses.

79.   As part of IDOT's routine process of approval of U-Plans, Walsh submitted its U-Plan with

proposed DBE subcontractors to IDOT for approval.

14

80.   DWJ was a certified DBE and the approval should have taken place as a matter of course.

81.   The then Director of the Small Enterprise Bureau, Carol Lyle, testified that without the interference of Cerpa and Villegas DWJ's participation would have been approved.

82.   Instead, individual defendants directly and without justification caused Walsh to terminate the contract for rebar with DWJ and other wise interfered with DWJ's contract with Walsh or with its prospective economic advantage.

83.   As a result of the actions and interference by defendants, Walsh replaced DWJ with another DBE, Steppo Supply & Construction, Inc.

84.   As a result of defendants' interference with DWJ's contract with Walsh, DWJ and Jackson have suffered a loss of business in excess of $7 million dollars and $750,000.00 in profits from the contract, since  the contract with Steppo was signed in December 2005.

85.   Additionally, defendants' interference cast a cloud over DWJ's status as a certified DBE and as a result DWJ lost contracts totaling in excess of $5 million dollars  with companies which had planned to utilize DWJ as a DBE on various contracts with other companies.

Wherefore,  plaintiff prays this Court to issue an order:

> A.   Declaring that individual defendants interfered with plaintiff's contract with Walsh or alternatively that defendant has interfered with plaintiff's prospective economic advantage.
>
> B.   Declaring that individual defendants interfered with plaintiff's contract or with plaintiff's prospective economic advantage without legal justification
>
> C.   Ordering individual defendants, jointly and severally to make plaintiff DWJ Petroleum whole for its losses which were caused by its illegal actions.

     D.     Ordering IDOT that defendant IDOT provide a contract to plaintiff and DWJ

Petroleum in the future which is equal in value to the one it illegally denied.

     E.     Grant plaintiff attorneys fees pursuant to 42 U.S.C. 1988.

## COUNT III
### INTENTIONAL DISCRIMINATION
### TITLE VI - 42 U.S.C. 2000(d)

86.   Plaintiffs hereby incorporate paragraphs 1-85 as if set out in their entirety herein.

87.   Plaintiffs sue defendant IDOT under 42 U.S.C. 2000(d) (Title VI) which prohibits race

discrimination in any program or activity receiving Federal financial assistance.

88.   DWJ is an African American owned firm whose work was included in Walsh's U-Plan

met the specifications required of those seeking to perform the contract.

89.   Instead of approving DWJ's participation in the contract, IDOT thorugh its eoployees

Cerpa and Villegas and with the approval of its chief officer then Secretary of Transportation,

defendant Timothy Martin forced Walsh to replace DWJ with another DBE.

90.   IDOT personnel knew that forcing out DWJ would result in its replacement by a white

woman-owned business – Steppo.

91.   Walsh was required to pay more for the same scope of work to Steppo than it had

committed to pay DWJ.

Wherefore, plaintiff prays this Court to issue an order:

     A.     Declaring that IDOT has violated plaintiff's right to be free from discrimination in the

making and awarding of contracts funded by Federal funds by causing DWJ Petroleum to

be replaced by a white-owned DBE on the 1x and 2x contracts awarded to Walsh for the

rehabilitation of the Dan Ryan Express lanes.

B.    Ordering IDOT to make plaintiffs whole for their losses which were caused by its

illegal actions.

C.    Grant plaintiff attorneys fees pursuant to 42 U.S.C. 1988.

D.    Order such other relief as it deems appropriate.

**COUNT IV**
**DISPARATE IMPACT**
**740 ILCS 23/5(A)(2)**

92.    Plaintiffs hereby incorporate paragraphs 1-91 as if set out in their entirety herein.

93.    Plaintiff sues defendant IDOT as to this count and invokes the supplementary jurisdiction of

this Court over state laws claims pursuant to 28 U.S.C. 1367  with respect to this claim.

94.    In or around 1988, the Federal government changed requirement for recipients of Federal

highway funds: where there had previously been separate participation goals for  minority owned

business enterprises (MBE) and women (WBE) owned business enterprises, there was now a

single goal for Disadvantaged Business Enterprises among which DBE's and WBE's comprised

these.

95.     After this change took place, IDOT began to award to women owned enterprises a greater

number of contracts than it had previously.

96.    Ultimately women owned and particularly white women owned DBE's also began to

receive more total dollars from IDOT than did minority owned businesses whether owned by a

woman or man.

97.    Since abolishing sub targets for woman owned and minority owned business enterprises,

17

IDOT has awarded a disproportionate share of contract dollars under its Disadvantaged Business Enterprise program to business entities owned and controlled by white women as compared to those owned by minorities.

98.   Because of the  IUCP, once one participating entity certifies a DBE,  that DBE can bid upon and is considered to be certified by the other entities.

99.   There have been high-profile investigations and cases of companies using women to act as a front for business enterprises owned and controlled by men.

100.  As a result of practices and procedures in place and the lack of adequate procedures to verify ownership and control of DBE's, IDOT has failed to meet goals for DBE participation and the contracts awarded by IDOT to DBE's have been overwhelmingly skewed to white woman owned companies.

Wherefore plaintiff respectfully requests that this Court enter an Order

A.   Declaring that IDOT has operated and managed its program of awarding contracts to DBE entities in a manner which has a disproportionate impact upon business entities owned by racial and national minorities.

B.   That in particular the manner in which DWJ was replaced by Steppo in the Dan Ryan 1x and 2x contracts is symptomatic of such decisions which exacerbate an already discriminatory situation.

C.   Ordering IDOT to take meaningful and effective steps to eliminate the disparity caused and created by its faulty procedures and practices.

D.   Grant plaintiff attorneys fees pursuant to 740 ILCS 23/5(c).

E.   Order such other relief as it deems appropriate.

18

## COUNT V
## DEFAMATION (LIBEL) PER SE

101. Plaintiffs hereby incorporate paragraphs 1-100 as if set out in their entirety herein.

102. Plaintiff sues defendant Paul Cerpa for the tort of defamation per se in that both made non-privileged, false and defamatory written statements to third parties which accused Mr. Jackson of criminal activity - operating his business as a front as well as falsely disparaging Mr. Jackson's honesty in his business.

103. Mr. Cerpa falsely wrote in an e-mail to individuals within IDOT that the Chicago Transit Authority had found DWJ to be "fronting" for a "petroleum mogul" which Mr. Cerpa knew or should have known to be false. Mr. Cerpa repeated these allegations to Secretary of Transportation Tim Martin.

104. A business operating as a front violates both criminal and civil laws.

105. Mr. Jackson has never been accused by any agency of fronting, nor have defendants pointed to any evidence other than Mr. Cerpa's say-so that DWJ was being operated as a front.

106. Mr. Cerpa by making such false and defamatory statements in effect accused Mr. Jackson of criminal conduct.

107. Mr. Cerpa by making such false and defamatory statements also maligned the honesty and integrity of Mr. Jackson and his company in its business dealings.

108. Damages for defamation per se are presumed.

Wherefore, plaintiff prays this Court to issue an order:

    A. Declaring that individual defendants Cerp and Villegas committed the tort of defamation per se against Mr. Jackson and his company.

B.      Ordering individual defendants, jointly and severally to pay plaintiff DWJ

Petroleum for presumed damages of over $1,000,000.

C.      Ordering defendants to pay punitive damages for making false and defamatory

statements about Mr. Jackson and DWJ Petroleum that maligned their business

reputation and accused plaintiffs of criminal conduct.

D.      Grant plaintiffs attorneys fees.


By: _____
One of plaintiffs' attorneys


Thomas H. Geoghegan
Jorge Sanchez
Michael Persoon
Despres Schwartz and Geoghegan
77 West Washington Street
Suite 711
Chicago, Illinois 60602
 312-372-2511

James R Fennerty
James R. Fennerty and Associates
36 South Wabash Avenue
Suite 1310
Chicago, IL  60603
(312) 345-1704

## CERTIFICATE OF SERVICE

I, Jorge Sánchez, an attorney, certify that on November 19, 2009, I served the foregoing attached **Notice of Filing Corrected Exhibit to Previously Noticed Motion** and **Proposed Second Amended Complaint** by electronic filing upon:

AAG Peter Koch
AAG Shirley Calloway
100 West Randolph
Chicago IL 60602

/s/ Jorge Sanchez

JORGE SÁNCHEZ
